BONNETT, FAIRBOURN, FRIEDMAN
 & BALINT, P.C.
PATRICIA N. SYVERSON (CA SBN 203111)
Manfred P. Muecke (CA SBN 222893)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
mmuecke@bffb.com
Telephone:  (619) 756-7748

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
ELAINE A. RYAN (*To be Admitted Pro Hac Vice*)
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
Telephone:  (602) 274-1100

LAW OFFICES OF RONALD A. MARRON
Ronald A. Marron (CA SBN 175650)
651 Arroyo Drive
San Diego, CA 92103
ron@consumersadvocates.com
Telephone: (619) 696-9006

Attorneys for Plaintiffs and the proposed classes

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE YOUNG, MELODY DIGREGORIA, AND PAULA DUDLEY On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> Wellnx Life Sciences USA, a Delaware corporation, <br><br> Defendant. | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR:** <br> 1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; <br> 2. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.* <br> 3. VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 349 <br> 4. VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 350 <br> 5. VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT, N.J. Stat. § 56:8-1 *et seq.* <br><br> DEMAND FOR JURY TRIAL |

Class Action Complaint

Plaintiffs Renee Young, Melody DiGregoria, and Paula Dudley bring this action on behalf of themselves and all others similarly situated against Defendant Wellnx Life Sciences USA and state:

**NATURE OF ACTION**

1. Defendant manufactures, markets, sells, and distributes weight-loss supplements under the SlimQuick brand. Three of the products are: SLIMQUICK® pure EXTRA STRENGTH GUMMIES, SLIMQUICK® pure GUMMIES[1], and SLIMQUICK® pure protein (collectively, "SlimQuick," or the "Products").[2]  The sole active ingredient in SlimQuick and the only represented "fat-burning component" is 150 mg of BioPure Green Tea™, a combination of Phosphatidylcholine (from soy) and Green Tea Extract (*Camellia sinensis*) (leaf) (hereafter, "BioPure").[3]  Through an extensive, widespread, comprehensive, and uniform nationwide marketing campaign, Defendant promises that SlimQuick is clinically proven to help women lose three times more weight than dieting alone.  On the front of each and every SlimQuick container, Defendant represents that SlimQuick is "WEIGHT LOSS DESIGNED **FOR WOMEN**" and that women will "LOSE **3X** THE WEIGHT."  Defendant also represents on the side of each and every SlimQuick container that SlimQuick's active ingredient BioPure "has been shown in a published clinical study to help overweight women lose 3 times the weight verses dieting alone, in just 13 weeks."  These representations are also prominently conveyed on the official Product webpage[4] where consumers can click on each Product and add it to their cart for purchase.  These representations are collectively referred to as the "weight loss representations."  Defendant's weight loss representations are false, misleading and reasonably likely to deceive the public.

2. In small print on the side of the containers near the bottom, the Products state "[a] clinical study has shown that overweight women using Slimquick Pure's key ingredient, along

---

[1] SLIMQUICK® pure GUMMIES were discontinued sometime between November 2014 and January 2015.
[2] Plaintiff reserves the right to add additional products upon completion of discovery.
[3] The inactive ingredients including, among other ingredients, corn syrup and sugar, are not represented to provide and do not provide any weight loss benefit.
[4] http://www.myslimquick.com/

Class Action Complaint

with a 1350 calorie diet, lost 25 pounds vs. 8 pounds with diet alone in just 13 weeks." By stating that this "key ingredient" has been clinically tested, Defendant is representing to consumers that credible scientific evidence supports Defendant's claim that the BioPure Green Tea™ active ingredient in SlimQuick provides 3X the weight loss benefits for women.

3.      Defendant does not identify the study it refers to on its SlimQuick packages, but does provide a link to the study on a webpage for the Products.[5]  The study is titled *GreenSelect® Phytosome as an Adjunct to a Low-Calorie Diet for Treatment of Obesity: A Clinical Trial* (the "GreenSelect Study"). The GreenSelect Study reported the weight loss effect of "GreenSelect Phytosome" on 100 obese men and women on a reduced calorie diet. Because Defendant cites to the GreenSelect Study as "a full clinical study of the 'key ingredient' in the SlimQuick formula [BioPure Green Tea™]", leading consumers to reasonably conclude that "BioPure Green Tea™" is Defendant's trademarked name for "GreenSelect Phytosome".[6]

4.      The GreenSelect Study is not competent and reliable scientific evidence and fails to demonstrate that the BioPure Green Tea extract in SlimQuick will help *women* "LOSE **3X** THE WEIGHT" as Defendant represents. The study was conducted on men and women with more male than female participants in the study group, and reports results for the group as a whole and not women specifically.  Thus, this Study provides no evidence or indication of any significant weight loss effect experienced by its female participants let alone that the women – as compared to the male participants – lost 3X the weight.

5.      Because the GreenSelect Study tested the wrong study population, it cannot be used to support Defendant's weight loss representations.  Indeed, the FDA has cautioned supplement manufacturers that supporting studies should be "based on a population that is similar to that which will be consuming the dietary supplement product."  *See* Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403(r)(6) of the Federal Food, Drug,              and              Cosmetic              Act,              available              at

---

[5] http://www.myslimquick.com/lp2/.
[6] *See* http://www.myslimquick.com/lp2/.

- 2 -
Class Action Complaint

http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/DietarySupplements/ucm073200.htm ("FDA Guidance").  As the target market for SlimQuick is women, and the majority of GreenSelect Study participants were men, the GreenSelect Study is not competent and reliable scientific evidence that the BioPure Green Tea™ in SlimQuick will help women "LOSE 3X THE WEIGHT."

6.     The inclusion of men in the GreenSelect Study – in fact, more men than women – is a material population difference with respect to weight loss.  Men generally have more muscle tissue than women. Because muscle burns more calories than body fat, men tend to burn calories faster and are likely to lose more weight than women on reduced calorie diets.  *See, e.g.*, Livingston EH and Kohlstadt I., *Simplified Resting Metabolic Rate-Predicting Formulas for Normal-Sized and Obese Individuals*, Obes Res. 2005 Jul; 13(7):1255-62 (calories burned at rest, aka resting metabolic rate, is materially higher in men than in women); Kathleen M. Zelman, *Weight-Loss Wars: Men vs. Women. Are the sexes really different when it comes to losing weight*, WebMD, www.webmd.com/diet/features/weight-loss-wars-men-vs-women; Bob Barnett, Do men lose weight faster than women?, www.cnn.com/2014/02/20/health/upwave-weight-gender/.  Thus, the reported weight loss in the GreenSelect Study cannot properly be extrapolated to women.

7.     Suggestive evidence of the material effect the inclusion of men had on the reported weight loss results is found in the GreenSelect Study itself. The Study discusses waistline variation, which is directly correlated with weight loss, for all participants generally and for men specifically, but does not discuss waistline variation specific to the female participants – the group of consumers Defendant expressly represents SlimQuick will cause 3X the weight loss.

8.     The only active ingredient in the Products is the 150 mg of "BioPure Green Tea™" in each serving. BioPure Green Tea™, aka GreenSelect Phytosome, is a standardized caffeine free dry green tea extract of *Camellia sinensis* complexed with Phosphatidylcholine (from soy) in a 1:2 ratio.  *See*  INDENA®, *Greenselect® Phytosome®*, "Chemical profile" *available at* http://jp.indena.com/pdf/jp/greenselect_phytosome_int.pdf.  That means for every 150 mg serving of SlimQuick, 50 mg is Green Tea Extract (*Camellia sinensis*) (leaf) and 100 mg is

- 3 -
Class Action Complaint

Phosphatidylcholine. Phosphatidylcholine is a fat like substance that acts as an emulsifier, i.e., it helps disperse fat particles in water and keeps them from separating. *See, e.g.*, Pichot, R., Watson RL., Norton IT, *Phospholipids at the Interfact: Current Trends and* Challenges, Int. J. Mol. Sci. 2013, 14, 11767-11794; doi:10.3390/ijms140611767, at 11787 ("phospholipids have been used as emulsifiers to stabilize O-W [oil-water] interfaces…."). It is not a slimming aid because it is a lipid.  Phosphatidylcholine simply acts to improve the bioavailability of the Green Tea Extract.

9.	The 50 mg of Green Tea Extract in a serving of SlimQuick contains 60% polyphenols – i.e., 30 mg of polyphenols per serving (*see* PHARMEXTRACTA®, Monoselect® Camellia tablets, available at http://www.pharmextracta.com/en/product-details.php?p=monoselect-camellia-compresse) – as well as methylxanthines (theobromine and theophylline), and theanine.[7]   Only the polyphenols are pharmacologically active with epigallocatechin 3-O-gallate ("EGCG") being by far the most pharmacologically active of the polyphenols. See INDENA®, Greenselect® Phytosome®, "Chemical profile" *available at* http://jp.indena.com/pdf/jp/greenselect_phytosome_int.pdf. Thus, EGCG is the focus of studies conducted to determine what, if any, weight loss benefits result from consumption of green tea. *See* Jurgens TM, Whelan AM, Killian L, Doucette S, Kirk S, Foy E, Green tea for weight loss and weight maintenance in overweight or obese adults. *Cochrane Database of Systematic Reviews* 2012, Issue 12. Art. No.: CD008650.  DOI:10.1002/14651858.CD008650.pub2, at 19-20. ("Cochrane Review"). EGCG accounts for 40% of the 30 mg. of polyphenols in the Green Tea Extract in SlimQuick.  *See* INDENA®, *Greenselect® Phytosome®*, "Chemical profile", *available at* http://jp.indena.com/pdf/jp/greenselect_phytosome_int.pdf. That means only 20 mg of each serving of SlimQuick is EGCG. The Products advise women to take two servings per day – 40 mg total of EGCG – to "LOSE **3X** THE WEIGHT."

---

[7] Theanine acts as a relaxant. *See* Yoto A, Motoki M, Murao S, Yokogoshi H. *Effects of L-theanine or caffeine intake on changes in blood pressure under physical and psychological stresses*. Journal of Physiological Anthropology. 2012;31(1):28. doi:10.1186/1880-6805-31-28. Theobromine, theophylline or theanine do not cause loss of body weight when consumed in food or dietary supplements.

10. Thus, whether SlimQuick will help women "LOSE **3X** THE WEIGHT" as Defendant represents is properly determined by the results of RCTs that have tested similar dosages of green tea extracts – and particularly similar doses of EGCG – on women without the addition of any ingredients that are not in the SlimQuick products that may confound the results. As more fully set forth below, high-quality RCTs evaluating weight loss in women – the target market for SlimQuick – unanimously demonstrate that consumption of green tea extract including all the active polyphenols in SlimQuick, and specifically the most pharmacologically active polyphenol EGCG, does not improve weight loss at all, let alone 3X the weight loss even when consumed in higher dosages than in Defendant's Products.

11. Defendant has employed numerous media to convey its uniform deceptive weight loss representations to consumers, including magazines, newspapers, the internet, social media websites, and, importantly, on the front of the SlimQuick containers where it cannot be missed by consumers. SlimQuick is a singular purpose product – its only purported benefit is to help women "LOSE **3X** THE WEIGHT." Thus, the only reason a woman would purchase SlimQuick is to obtain the advertised weight loss benefits – benefits it does not and cannot provide.

12. Defendant's weight loss representations are false, misleading and reasonably likely to deceive consumers. As a result, consumers – including Plaintiffs and members of the proposed Classes – have purchased Products that do not perform as advertised.

13. Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who purchased SlimQuick to halt the dissemination of this false, misleading, and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased SlimQuick. Based on violations of California, New York and New Jersey unfair competition laws (detailed below), Plaintiffs seek injunctive and restitutionary relief, as well as damages, for consumers who purchased SlimQuick.

**JURISDICTION AND VENUE**

14.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some members of the Class are citizens of a state different from Defendant.

15.    This Court has personal jurisdiction over Defendant because Defendant is authorized to conduct and does business in California, including this District.   Defendant marketed, promoted, distributed, and sold SlimQuick in California, and Defendant has sufficient minimum contacts with this State and/or sufficiently availed itself of the markets in this State through its promotion, sales, distribution, and marketing within this State, including this District, to render the exercise of jurisdiction by this Court permissible.

16.    Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events giving rise to Plaintiff Renee Young's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.

**PARTIES**

17.    During the relevant time period, Plaintiff Renee Young resided in Windsor, California and was a citizen of the State of California. In or around the Winter of 2012 to the Summer of 2013, for a period of at least six (6) months, Plaintiff Young was exposed to and saw Defendant's weight loss representations by reading the SLIMQUICK® pure protein label. Plaintiff Young purchased SLIMQUICK® pure protein at a Safeway in Windsor, California, in reliance on Defendant's weight loss representations.  She paid approximately $20.00-30.00 for the Product.  The SlimQuick Product Plaintiff Young purchased did not and could not provide weight loss benefits as represented, and was also falsely or deceptively advertised because the "clinical study" the Product's claims are based on does not actually support the express and implied claims made by Defendant. Morever, the Product is not "Weight Loss Designed for Women." Had Plaintiff Young known the truth about Defendant's misrepresentations, she would

not have purchased SLIMQUICK® pure protein to lose weight.   As a result, Plaintiff Young suffered injury in fact and lost money at the time of purchase.

18.    During the relevant time period, Plaintiff Melody DiGregoria resided in La Stamford, New York and was a citizen of the State of New York. Plaintiff DiGregoria was exposed to and saw Defendant's weight loss representations by reading the SLIMQUICK® pure EXTRA STRENGTH GUMMIES label.   Plaintiff DiGregoria purchased SLIMQUICK® pure EXTRA STRENGTH GUMMIES once or twice over the course of a two-and-a-half year period, and up until about July 2016, at either a Walmart in Oneonta, New York or a Rite Aide in Stamford, New York, in reliance on Defendant's weight loss representations. She paid approximately $20.00 for the Product each time.   The SlimQuick Products Plaintiff DiGregoria purchased did not and could not provide weight loss benefits as represented, and were also falsely or deceptively advertised because the "clinical study" the Products' claims are based on does not actually support the express and implied claims made by Defendant. Morever, the Products are not "Weight Loss Designed for Women."   Had Plaintiff DiGregoria known the truth about Defendant's misrepresentations, she would not have purchased SLIMQUICK® pure EXTRA STRENGTH GUMMIES.  As a result, Plaintiff DiGregoria suffered injury in fact and lost money at the time of purchase.

19.    During the relevant time period, Plaintiff Paula Dudley resided in Camden, New Jersey and was a citizen of the State of New Jersey. Within the last year, Plaintiff Dudley was exposed to and saw Defendant's weight loss representations by reading the SLIMQUICK® pure EXTRA STRENGTH GUMMIES label.   Plaintiff Dudley purchased SLIMQUICK® pure EXTRA STRENGTH GUMMIES at a CVS in Camden, New Jersey, in reliance on Defendant's weight loss representations. She paid approximately $20.00-$25.00 for the Product.   The SlimQuick Product Plaintiff Dudley purchased did not and could not provide weight loss benefits as represented, and was also falsely or deceptively advertised because the "clinical study" the Product's claims are based on does not actually support the express and implied claims made by Defendant. Morever, the Product is not "Weight Loss Designed for Women."   Had Plaintiff

- 7 -
Class Action Complaint

Dudley known the truth about Defendant's misrepresentations, she would not have purchased SLIMQUICK® pure EXTRA STRENGTH GUMMIES.  As a result, Plaintiff Dudley suffered injury in fact and lost money at the time of purchase.

20.    Defendant Wellnx Life Sciences USA is a Delaware corporation having its principal place of business in Wilmington, Delaware.  Defendant Wellnx Life Sciences USA manufactures, advertises, markets, distributes, and/or sells SlimQuick to thousands of consumers in California and throughout the country.

## FACTUAL ALLEGATIONS

### *SlimQuick*

21.    Defendant manufactures, distributes, markets, and sells over-the-counter weight loss products.  This lawsuit concerns three of those products — SLIMQUICK® Pure EXTRA STRENGTH GUMMIES, SLIMQUICK® pure GUMMIES, and SLIMQUICK® pure protein. The Products are marketed as supplements with the singular purpose of providing weight loss benefits to women.   SlimQuick is sold in virtually every major food, drug, and mass retail outlet in the country including, but not limited to: CVS, Kroger, Publix, Target, Walgreens, and Wal-Mart. A single container of SlimQuick retails for approximately $20.00–$30.00. A container of SLIMQUICK® pure EXTRA STRENGTH GUMMIES provides a 15-day supply, a container of SLIMQUICK® pure GUMMIES provided a 10-day supply, and a container of SLIMQUICK® pure protein provides a 7.5-day supply. Thus, a consumer who uses SlimQuick for 13 weeks — the length of time represented on the Product containers to "LOSE **3X** THE WEIGHT"— will spend between $140 and $340 on SlimQuick.

22.    Throughout the relevant time period, Defendant has consistently conveyed the message to consumers throughout the country that SlimQuick is "WEIGHT LOSS DESIGNED **FOR WOMEN**" and will help women "LOSE **3X** THE WEIGHT" versus dieting alone simply by taking the recommended daily dosage for 13 weeks.  It does not.  Defendant's weight loss representations are false, misleading and deceptive.

23.    Each and every consumer who purchases the Products is exposed to the deceptive

weight loss representations, which appear prominently and conspicuously on the front and side of each SlimQuick Product. Copies of the labels are attached hereto as Exhibit A.  The front of the SlimQuick containers represent:



(SLIMQUICK® pure GUMMIES)



(SLIMQUICK® pure

EXTRA STRENGTH GUMMIES)



(SLIMQUICK® pure protein)

24.    The side of the SlimQuick containers repeat the weight loss representations:



(SLIMQUICK® pure GUMMIES)



(SLIMQUICK® pure EXTRA STRENGTH GUMMIES)

Class Action Complaint



(SLIMQUICK® pure protein)

25. The top of the SLIMQUICK® pure protein package also prominently displays the deceptive weight loss representation:



***SlimQuick Is Not Proven to and Does Not Help Women Lose 3X the Weight***

26.     The only active ingredient in the Products is the 150 mg of "BioPure Green Tea™" in each serving. BioPure Green Tea™, aka GreenSelect Phytosome, is a standardized caffeine free dry green tea extract of *Camellia sinensis* complexed with Phosphatidylcholine (from soy) in a 1:2 ratio. *See* INDENA®, *Greenselect® Phytosome®*, "Chemical profile" *available at* http://jp.indena.com/pdf/jp/greenselect_phytosome_int.pdf.  That means for every 150 mg serving of SlimQuick, 50 mg is Green Tea Extract (*Camellia sinensis*) (leaf) and 100 mg is Phosphatidylcholine. Phosphatidylcholine is a fat like substance that acts as an emulsifier, i.e., it helps disperse fat particles in water and keeps them from separating. *See, e.g.*, Pichot, R., Watson RL., Norton IT, *Phospholipids at the Interfact: Current Trends and* Challenges, Int. J. Mol. Sci.

2013, 14, 11767-11794; doi:10.3390/ijms140611767, at 11787 ("phospholipids have been used as emulsifiers to stabilize O-W [oil-water] interfaces…."). It is not a slimming aid because it is a lipid. Phosphatidylcholine simply acts to improve the bioavailability of the Green Tea Extract.

27. The 50 mg of Green Tea Extract in a serving of SlimQuick contains 60% polyphenols – i.e., 30 mg. of polyphenols per serving (*see* PHARMEXTRACTA®, Monoselect® Camellia tablets, available at http://www.pharmextracta.com/en/product-details.php?p=monoselect-camellia-compresse) – as well as methylxanthines (theobromine and theophylline), and theanine.[8]  Only the polyphenols are pharmacologically active with epigallocatechin 3-O-gallate ("EGCG") being by far the most pharmacologically active of the polyphenols. See INDENA®, Greenselect® Phytosome®, "Chemical profile" *available at* http://jp.indena.com/pdf/jp/greenselect_phytosome_int.pdf. Thus, EGCG is the focus of studies conducted to determine what, if any, weight loss benefits result from consumption of green tea. *See* Cochrane Review at 19-20. EGCG accounts for 40% of the 30 mg. of polyphenols in the Green Tea Extract in SlimQuick.  See INDENA®, Greenselect® Phytosome®, "Chemical profile" *available at* http://jp.indena.com/pdf/jp/greenselect_phytosome_int.pdf.  That means only 20 mg of each serving of SlimQuick is EGCG. The Products advise women to take two servings per day – 40 mg total of EGCG – to "LOSE 3X THE WEIGHT."

28. Prominently featured under the "LOSE **3X** THE WEIGHT" promise to women is the representation that the BioPure Green Tea – the "key ingredient" in SlimQuick and the only represented "fat-burning component" – "has been shown in a published clinical study to help overweight women lose 3 times the weight versus dieting alone, in just 13 weeks.Δ"

29. On the SLIMQUICK® pure EXTRA STRENGTH GUMMIES and the SLIMQUICK® pure GUMMIES containers, the "Δ" directs consumers to a footnote stating: "A

---

[8] Theanine acts as a relaxant. *See* Yoto A, Motoki M, Murao S, Yokogoshi H. *Effects of L-theanine or caffeine intake on changes in blood pressure under physical and psychological stresses*. Journal of Physiological Anthropology. 2012;31(1):28. doi:10.1186/1880-6805-31-28. Theobromine, theophylline or theanine do not cause loss of body weight when consumed in food or dietary supplements.

clinical study has shown that overweight women using Slimquick Pure's key ingredient, along with a 1350 calorie diet, lost 25 pounds vs. 8 pounds with diet alone in just 13 weeks." The footnote on the SLIMQUICK® pure protein container is virtually identical but references "Slimquick Pure *Protein's* key ingredient" (emphasis added).[9] The study itself is not identified on the Product packages, but Defendant does provide a link to the study on the webpage for the Products.[10] The study is titled *GreenSelect® Phytosome as an Adjunct to a Low-Calorie Diet for Treatment of Obesity: A Clinical Trial* (the "GreenSelect Study").

30.    The GreenSelect Study observed 100 obese men and women over 90 days (just under 13 weeks). One group of participants consumed a reduced calorie diet (1350 calories per day for women) along with "GreenSelect Phytosome", a green tea extract that Defendant calls "BioPure Green Tea™" which is the "key ingredient" and represented "fat-burning component" in its SlimQuick products. The second group of participants consumed the reduced calorie diet only. According to the study, participants taking green tea extract lost an average of 14 kilograms, while participants in the diet only group lost an average of 5 kilograms.

31.    The GreenSelect Study is not competent and reliable scientific evidence and does not demonstrate that the BioPure Green Tea extract in SlimQuick will help *women* "LOSE **3X** THE WEIGHT" as Defendant represents. The Study was conducted on men and women with more male than female participants in the study group, and reports results for the group as a whole and not women specifically. Thus, this study provides no evidence or indication of any significant weight loss effect experienced by its female participants let alone that the women – as compared to the male participants – lost 3X the weight.

32.    Because the GreenSelect Study tested the wrong study population, it cannot be used to support Defendant's weight loss representations. Indeed, the FDA has cautioned supplement

---

[9] A further footnote, marked by the symbols "*Δ", carries a required "disclaimer" that the Product is not "intended to diagnose, treat, cure or prevent any disease." This disclaimer language is required when a dietary supplement manufacturer makes a "structure/function" claim, such as the weight loss claim Defendant has made here. This disease disclaimer has no impact on the representations being challenged.
[10] http://www.myslimquick.com/lp2/.

manufacturers that supporting studies should be "based on a population that is similar to that which will be consuming the dietary supplement product." *See* Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403(r)(6) of the Federal Food, Drug, and Cosmetic Act, available at http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/DietarySupplements/ucm073200.htm. As the target market for SlimQuick is women, and the majority of GreenSelect Study participants were men, the GreenSelect Study is not competent and reliable scientific evidence that the BioPure Green Tea™ in SlimQuick will help "women" "LOSE 3X THE WEIGHT."

33.    The inclusion of men in the GreenSelect Study – particularly more men than women – is a material population difference with respect to weight loss. Men generally have more muscle tissue than women. Because muscle burns more calories than body fat, men tend to burn calories faster and are likely to lose more weight than women on reduced calorie diets. *See, e.g.,* Livingston EH and Kohlstadt I., *Simplified Resting Metabolic Rate-Predicting Formulas for Normal-Sized and Obese Individuals*, Obes Res. 2005 Jul; 13(7):1255-62 (calories burned at rest, aka resting metabolic rate, is materially higher in men than in women). Thus, the reported weight loss in the GreenSelect Study cannot properly be extrapolated to women.

34.    Suggestive evidence of the material effect the inclusion of men had on the reported weight loss results is found in the GreenSelect Study itself. The Study discusses waistline variation, which is directly correlated with weight loss, for all participants generally and for men specifically, but does not discuss waistline variation specific to the female participants – the group of consumers for whom Defendant expressly represents the SlimQuick Products will cause 3X the weight loss.

35.    In contrast to the highly flawed GreenSelect Study, several randomized controlled clinical trials ("RCTs") – regarded by experts in the field as the gold standard of proof – conducted on women (the target market for SlimQuick) taking a daily dose of 300 mg or more of EGCG – the most abundant and pharmacologically active polyphenol in green tea extract – have

- 18 -
Class Action Complaint

unanimously concluded that green tea extract supplementation does not result in any greater weight loss – let alone 3X the weight loss as Defendant represents. This is so even when women took much higher doses of EGCG than the 40 mg in a daily dose of Defendant's SlimQuick Products.

36.     For example, in an 84-day study in the Netherlands, forty-six women were put on a low energy diet and given either a combination of 595.8 mg of EGCG and 236.7 mg of caffeine per day or a placebo. The study concluded that the ingestion of tea catechins and caffeine along with a low energy diet had no benefit for any measures of body weight. *See* Diepvens, K., et al., *Effects of green tea on resting energy expenditure and substrate oxidation during weight loss in overweight females*, 94(6) British Journal of Nutrition 1026-34 (2005). Thus, even much higher dosages of green tea polyphenols – and EGCG in particular – than are in Defendant's Products did not result in any weight loss – let alone 3X the weight loss Defendant represents.

37.     In Australia, a 12-week study of thirty-eight women had subjects combine moderate exercise with 300 mg per day of either EGCG or placebo. The study reported that moderate consumption of EGCG does not result in loss of body fat.  *See* Hill, A., et al., *Can EGCG reduce abdominal fat in obese subjects?*, 26(4) Journal of the American College of Nutrition 396S-402S (2007).  As weight loss is directly correlated with a loss of body fat, no loss of body fat means no weight loss. *See* Obesity and overweight fact sheet, WORLD HEALTH ORGANIZATION (June 2016), available at http://www.who.int/mediacentre/factsheets/fs311/en/ (overweight and obesity are defined as abnormal or excessive fat accumulation). Even in much higher dosages than is in Defendant's Products, green tea extract – and EGCG in particular – did not result in any weight loss, let alone 3X the weight loss.

38.     In another 12-week study, eighty-three women were given 300 mg per day of EGCG or placebo. The study reported no significant difference in the changes in body weight between the EGCG and placebo study groups and concluded that dietary supplementation with 300 mg per day of EGCG for 12 weeks did not improve weight loss. *See* Mielgo-Ayuso, J., et. al., *Effects of dietary supplementation with epigallocatechin-3-gallate on weight loss, energy*

*homeostasis, cardiometabolic risk factors and liver function in obese women: randomized, double-blind, placebo-controlled clinical trial*, British Journal of Nutrition (2014), 111, 1263-1271.

39.     In addition to these RCTs on women, a number of systematic reviews and meta-analyses which have identified, analyzed, and synthesized all high-quality RCTs related to green tea extract supplementation have concluded that green tea extract supplementation even in combination with added caffeine – a known weight loss stimulant – does not cause a clinically meaningful reduction in weight – let alone a 3X weight reduction.

40.     In 2012, the Cochrane Collaboration conducted a review titled "Green tea for weight loss and weight maintenance in overweight or obese adults."[11]  Jurgens TM, Whelan AM, Killian L, Doucette S, Kirk S, Foy E, Green tea for weight loss and weight maintenance in overweight or obese adults. *Cochrane Database of Systematic Reviews* 2012, Issue 12. Art. No.: CD008650.  DOI:10.1002/14651858.CD008650.pub2. ("Cochrane Review").  After excluding Japanese studies whose Asian participants have a higher frequency of the highly active enzyme COMT[12], the Cochrane Collaboration concluded weight loss in adults who had consumed green tea extracts was "statistically not significant, was very small and is not likely to be clinically important."[13]

41.     Prior to the Cochrane Review, a systematic review and meta-analysis of RCTs on green tea catechins[14] was conducted in 2009 and concluded that, when green tea catechins were administered with caffeine, statistically significant reductions in body weight were seen, but were

[11]  The purpose of the review was to assess the efficacy and safety of green tea preparations for weight loss and weight maintenance in overweight or obese adults.  18 randomized controlled trials were included in the review.

[12] Given their unique genetic makeup, Asians are more susceptible to the COMT inhibition effects of green tea, leading to larger weight loss results making them non-comparable to white populations. *See* Cochrane Review, at 22.

[13] Exclusion of the Japanese studies is consistent with the FDA's Guidance for the Industry that foreign research cannot be used to substantiate a claim about the product's use intended for consumers in the United States if its population differs in diet, general health or patterns of use from U.S. consumers. *See* FDA Guidance at Section II.C. "A note on foreign research".

[14] Green tea catechins are the flavanol group of polyphenols, including EGCG.

modest at best – certainly not 3X the weight loss. Significantly, the review further reported that green tea catechins alone (i.e. without added caffeine) – such as are in Defendant's Products – do not contribute to weight loss. *See* Phung, O., et. al., *Effect of green tea catechins with or without caffeine on anthropometric measures: a systematic review and meta-analysis*, Am. J Clin Nutr 2010;91:73-81 (2010).

42.    A more recent systematic review and meta-analysis examined 5 RCTs on green tea catechins and weight loss and concluded that intake of green tea or green tea extracts has no statistically significant effect on the weight of overweight or obese adults. *See* Baladia, E., et. al., *Effect of green tea or green tea extract consumption on body weight and body composition; systematic review and meta-analysis*, Nutr Hosp. 2014;29(3):479-490 (in Spanish).

43.    Thus, the well-conducted scientific evidence is overwhelming and unanimous that green tea extract supplementation does not cause clinically meaningful weight loss – let alone 3X the weight loss – in women (or men for that matter too) even in much higher daily doses than what is in Defendant's Products and even when known weight loss stimulants such as caffeine are added.

### The Impact of Defendant's Wrongful Conduct

44.    Plaintiffs and Class members have been and will continue to be deceived or misled by Defendant's deceptive weight loss representations. Plaintiffs and the Class members have been damaged in their purchases of the Products and have been deceived into purchasing the Products that they believed, based on Defendant's representations, would help them lose three times the weight, when, in fact, they do not.

## CLASS DEFINITION AND ALLEGATIONS

45.    Plaintiff Young brings this action on behalf of herself and all other similarly situated California consumers pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class:

**California-Only Class Action**
All California consumers who, during the applicable statute of limitations period, purchased SLIMQUICK® pure EXTRA STRENGTH GUMMIES, SLIMQUICK® pure GUMMIES[15], and/or SLIMQUICK® pure protein (collectively, "SlimQuick," or the "Products").

Excluded from this Class are Defendant and its officers, directors and employees, and those who purchased SlimQuick for the purpose of resale.

46.    Plaintiff DiGregoria brings this action on behalf of herself and all other similarly situated New York consumers pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

**New York-Only Class Action**
All New York consumers who, during the applicable statute of limitations period, purchased SLIMQUICK® pure EXTRA STRENGTH GUMMIES, SLIMQUICK® pure GUMMIES[16], and/or SLIMQUICK® pure protein (collectively, "SlimQuick," or the "Products").

Excluded from this Class are Defendant and its officers, directors and employees, and those who purchased SlimQuick for the purpose of resale.

47.    Plaintiff Dudley brings this action on behalf of herself and all other similarly situated New Jersey consumers pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

**New Jersey-Only Class Action**
All New Jersey consumers who, during the applicable statute of limitations period, purchased SLIMQUICK® pure EXTRA

---

[15] SLIMQUICK® pure GUMMIES were discontinued sometime between November 2014 and January 2015.
[16] SLIMQUICK® pure GUMMIES were discontinued sometime between November 2014 and January 2015.

STRENGTH GUMMIES, SLIMQUICK® pure GUMMIES[17], and/or SLIMQUICK® pure protein (collectively, "SlimQuick," or the "Products").

Excluded from this Class are Defendant and its officers, directors and employees, and those who purchased SlimQuick for the purpose of resale.

48.     **Numerosity**.   The members of the Classes are so numerous that joinder of all members of the Classes is impracticable.   Plaintiffs are informed and believe that the proposed Classes contain thousands of purchasers of SlimQuick who have been damaged by Defendant's conduct as alleged herein.   The precise number of Class members is unknown to Plaintiffs.

49.     **Existence and Predominance of Common Questions of Law and Fact**.   This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.   These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant's representations discussed above are misleading, or objectively reasonably likely to deceive;

(b)     whether Defendant's alleged conduct is unlawful;

(c)     whether the alleged conduct constitutes violations of the laws asserted;

(d)     whether Defendant engaged in false or misleading advertising; and

(e)     whether Plaintiffs and Class members are entitled to appropriate remedies, including restitution, damages, corrective advertising and injunctive relief.

50.     **Typicality.**   Plaintiffs' claims are typical of the claims of the members of the Classes because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Defendant's deceptive weight loss representations that accompanied each and every container of SlimQuick.   Plaintiffs are also advancing the same claims and legal theories on behalf of themselves and all members of the Classes.

51.     **Adequacy of Representation.**   Plaintiffs will fairly and adequately protect the

---

[17] SLIMQUICK® pure GUMMIES were discontinued sometime between November 2014 and January 2015.

- 23 -
Class Action Complaint

interests of the members of the Classes.  Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Classes.

52.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would thus be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

53.     Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Classes, on grounds generally applicable to the entire Classes, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiffs and Class members.

54.     Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiffs and Class members.  Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Classes and the general public will continue to be deceived.

55.     Defendant has acted and refused to act on grounds generally applicable to the Classes, making appropriate final injunctive relief with respect to the Classes as a whole.

**COUNT I**
**Violation of Business & Professions Code §17200,** *et seq.*
**Unfair Business Acts and Practices**
**(On Behalf of the California-Only Class)**

56. Plaintiff Young repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

57. Plaintiff Young brings this claim individually and on behalf of the California-Only Class.

58. As alleged herein, Plaintiff Young has suffered injury in fact and lost money or property as a result of Defendant's conduct because they purchased SlimQuick in reliance on Defendant's claim that the Products would help them lose 3 times the weight, but did not receive a Product that provides those benefits.

59. Plaintiff Young suffered that injury at the time of purchase, when she bought a product that does not deliver the benefits it promises.

60. The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL") prohibits any "unfair," "unlawful," or "fraudulent" business act or practice, including any false or misleading advertising.

61. In the course of conducting business, Defendant committed "fraudulent business act[s] or practices," or engaged in unfair business competition or unlawful business practices by, *inter alia*, making the weight loss representations (which also constitutes advertising within the meaning of §17200) regarding the Products in its advertising campaign, including the Products' labeling, as set forth more fully herein.

62. Defendant's actions, claims and misleading statements, as more fully set forth above, are false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq.* In addition, Defendant's conduct as described herein was unlawful under all the laws asserted herein and the California Sherman Food and Drug Law ("Sherman Law"), when viewing the totality of the labeling claims, by being misleading in any aspect. Defendant's conduct was also unfair because when weighing Defendant's

- 25 -
Class Action Complaint

alternatives, such as advertising truthfully, against the high cost these Products are costing consumers, Defendant's business conduct offended the public policy of this state to preserve an honest marketplace.

63.    Plaintiff Young and other members of the Class have in fact been deceived as a result of their reliance on Defendant's material weight loss representations.  Plaintiff Young and the other Class members have suffered injury in fact and lost money as a result of their purchase(s) of Defendant's Products that do not provide weight loss benefits.

64.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

65.    Plaintiff Young, on behalf of herself, all others similarly situated, and the general public, seeks restitution of all money obtained from Plaintiff Young and the members of the California-only Class collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## COUNT II
### Violations of the Consumers Legal Remedies Act – Civil Code §1750 *et seq.*
### (On Behalf of the California-Only Class)

66.    Plaintiff Young repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

67.    Plaintiff Young brings this claim individually and on behalf of the California-Only Class.

68.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act").

69.    Plaintiff Young is a consumer as defined by California Civil Code §1761(d). SlimQuick is a "good" within the meaning of the Act.

70.    Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff Young and

the California-Only Class which were intended to result in, and did result in, the sale of SlimQuick:

> (5)    Representing that [SlimQuick has] . . . characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

\*        \*        \*

> (7)    Representing that [SlimQuick is] of a particular standard, quality or grade . . . if [it is] of another.

\*        \*        \*

> (9)    Advertising goods . . . with intent not to sell them as advertised.

\*        \*        \*

> (16)   Representing that [SlimQuick has] been supplied in accordance with a previous representation when [it has] not.

71.    Pursuant to California Civil Code §1782(d), Plaintiff Young and the California-Only Class seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

72.    Pursuant to §1782 of the Act, Plaintiff Young notified Defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.  A copy of the letter is attached hereto as Exhibit B.

73.    If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff Young will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate.

74.    Defendant's conduct is fraudulent, wanton and malicious.

75.    Pursuant to §1780(d) of the Act, attached hereto as Exhibit C is the affidavit showing that this action has been commenced in the proper forum.

- 27 -
Class Action Complaint

## COUNT III
### Violations of New York General Business Law § 349
### (On Behalf of the New York-Only Class)

76.    Plaintiff DiGregoria repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

77.    Plaintiff DiGregoria brings this claim on behalf of herself and on behalf of the New York-Only Class.

78.    This cause of action is brought pursuant to New York General Business Law §349.

79.    Defendant made false and misleading marketing and advertising claims, representing that SlimQuick is "WEIGHT LOSS DESIGNED **FOR WOMEN**", that women will "LOSE **3X** THE WEIGHT", and that SlimQuick's active ingredient BioPure "has been shown in a published clinical study to help overweight women lose 3 times the weight verses dieting alone, in just 13 weeks" when, in fact, these claims have been scientifically disproved.

80.    As set forth above, by advertising, marketing, distributing and/or selling SlimQuick to Plaintiff DiGregoria and the New York-Only Class, Defendant engaged in, and continues to engage in, unfair or deceptive acts and practices.

81.    The foregoing deceptive acts and practices were directed at consumers.

82.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of the SlimQuick Products to induce consumers to purchase same.

83.    Plaintiff DiGregoria and members of the New York-Only Class were injured because they would not have purchased the SlimQuick Products had they known that Defendant's claims were false and misleading, that Defendant's represented supporting clinical study did not show women lost any significant weight, let alone 3X the weight, and that several RCTs – regarded by experts in the field as the gold standard of proof – conducted on women (the target market for SlimQuick) taking a daily dose of 300 mg or more of EGCG – the most abundant and pharmacologically active polyphenol in green tea extract – have unanimously concluded that green tea extract supplementation does not result in any greater weight loss – let alone 3X the

- 28 -
Class Action Complaint

weight loss as Defendant represents.

84.     On behalf of herself and other members of the New York-Only Class, Plaintiff DiGregoria seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or $50 whichever is greater, and reasonable attorneys' fees.

**COUNT IV**
**Violations of New York General Business Law § 350**
**(On Behalf of the New York-Only Class)**

85.     Plaintiff DiGregoria repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

86.     Plaintiff DiGregoria brings this claim on behalf of herself and on behalf of the New York-Only Class.

87.     This cause of action is brought pursuant to New York General Business Law §350.

88.     New York G.B.L. § 350-a defines "false advertising" as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

89.     Defendant made false and misleading marketing and advertising claims, representing that SlimQuick is "WEIGHT LOSS DESIGNED **FOR WOMEN**", that women will "LOSE **3X** THE WEIGHT", and that SlimQuick's active ingredient BioPure "has been shown in a published clinical study to help overweight women lose 3 times the weight verses dieting alone, in just 13 weeks" when, in fact, these claims have been scientifically disproved.

90.     By advertising, marketing, distributing and/or selling SlimQuick to Plaintiff DiGregoria and the New York-Only Class, Defendant engaged in, and continues to engage in, false advertising.

91.     Plaintiff DiGregoria and other members of the New York-Only Class seek to enjoin such false advertising as described above. Each of the members of the New York-Only Class will be irreparably harmed unless the unlawful actions of Defendant are enjoined in that Defendant will continue to falsely and misleadingly advertise and market SlimQuick as "WEIGHT LOSS DESIGNED **FOR WOMEN**" that will help women "LOSE **3X** THE

WEIGHT", and that SlimQuick's active ingredient BioPure "has been shown in a published clinical study to help overweight women lose 3 times the weight verses dieting alone, in just 13 weeks." Therefore, Plaintiff DiGregoria and the New York-Only Class request an order granting them injunctive relief to include appropriate disclosures and/or disclaimers in the advertising, marketing and promotion of SlimQuick.

92.    Further, as a direct and proximate result of Defendant's violation of G.B.L. § 350 as alleged above, Plaintiff DiGregoria and other members of the New York-Only Class have suffered damages, in an amount to be determined at trial.

**COUNT V**
**Violations of the New Jersey Consumer Fraud Act**
**N.J. Stat. § 56:8-1 *et seq.***
**(On Behalf of the New Jersey-Only Class)**

93.    Plaintiff Dudley repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

94.    Plaintiff Dudley brings this claim on behalf of herself and on behalf of the New Jersey-Only Class.

95.    This cause of action is brought under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, et seq. ("NJCFA"), pursuant to §§ 56:8-19 and 56:8-2.12 of the NJCFA.

96.    Section 56:8-2 provides, in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

97.    Defendant's actions, including the false and misleading representations regarding the efficacy of the SlimQuick Products, and the above-described course of fraudulent conduct constitute acts, uses, or employment by Defendant of unconscionable commercial practices,

deception, fraud, false pretenses, and misrepresentations regarding the efficacy, value, standard, characteristics, and benefits of the SlimQuick Products in violation of the NJCFA.

98. Plaintiff Dudley and other members of the New Jersey-Only Class are consumers who purchased consumer goods – the SlimQuick Products – pursuant to a consumer transaction for personal uses and are, therefore, subject to protection under the NJCFA.

99. Defendant designed, manufactured, sold, distributed and/or advertised the SlimQuick Products and is subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

100. The acts, practices, and misrepresentations by Defendant made in connection with the distribution, sale, and advertisement of the SlimQuick Products constitute unlawful practices within the meaning of the NJCFA.

101. Defendant engaged in unlawful practices by marketing and selling the SlimQuick Products as effective to help women lose three times the weight. In reality, however, the SlimQuick Products do not help women lose three times the weight.

102. Plaintiff Dudley and New Jersey-Only Class members read and relied upon the representations on the Product packages before purchasing the SlimQuick Products and subsequently purchased the Products based on those representations.

103. As a result of the use and employment by Defendant of the unlawful acts, Plaintiff Dudley and New Jersey-Only Class members have suffered damages and ascertainable loss, and have been injured.

104. Under N.J. Stat. §§ 56:8-2.11, 56:8-2.12, and 56:8-19, Plaintiff Dudley and the New Jersey-Only Class members are entitled to a refund of all monies acquired by Defendant by means of the unlawful practices alleged above, as well as compensatory damages, including treble damages and attorneys' fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment:

A.    Certifying the Classes as requested herein;

B.    Awarding damages to Plaintiffs DiGregoria and Dudley and the New York and New Jersey Class members;

C.    Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and the proposed Class members;

D.    Awarding injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein;

E.    Ordering Defendant to engage in a corrective advertising campaign;

F.    Awarding attorneys' fees and costs as allowed by law or statute; and

G.    Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial of their claims by jury to the extent authorized by law.

Dated: _____, 2016

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.

/s/*Patricia N. Syverson*

Patricia N. Syverson (203111)
Manfred P. Muecke (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
mmuecke@bffb.com
Telephone: (619) 756-7748

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Elaine A. Ryan (*To be Admitted Pro Hac Vice*)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
eryan@bffb.com
Telephone: (602) 274-1100

LAW OFFICES OF RONALD A. MARRON
Ronald A. Marron (CA SBN 175650)
651 Arroyo Drive
San Diego, CA 92103
ron@consumersadvocates.com
Telephone: (619) 696-9006
Fax: (619) 564-6665

Attorneys for Plaintiffs and the proposed Classes

- 33 -
Class Action Complaint